UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA ZETWICK,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF YOLO; EDWARD G. PRIETO, an individual; and DOES 1 through 50, inclusive,<br><br>        Defendant. | No. 12-CV-02486<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT** |

This matter is before the Court pursuant to Defendants Yolo County, Edward G. Prieto, and DOES 1–50's (collectively hereinafter referred to as "Defendants") Motion for Summary Judgment.  (ECF No. 14.)  Plaintiff Victoria Zetwick ("Plaintiff") opposes Defendants' motion.  (ECF No. 19.)  The Court has carefully considered the arguments raised by both parties.  For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Victoria Zetwick initiated this case on October 3, 2012, alleging sexual harassment under Title VII of the 1964 Civil Rights Act ( 42 U.S.C. §2000e *et seq.*) ("Title VII") against Defendant County of Yolo and DOES 1–50, sexual harassment under the California Fair Employment Housing Act (Cal. Gov. Code §12900 *et seq.*) ("FEHA") against all Defendants, and

1

failure to prevent sexual harassment under the FEHA (Cal. Gov. Code §12940(k)) against Defendant County of Yolo and DOES 1–50.[1] (Complaint, ECF No. 1.) In her complaint, Plaintiff alleges that, during the course of her 14 year employment as a correctional officer with the Yolo County's Sherriff's Department ("the Department"), she was the victim of a hostile work environment. (ECF No. 1.) Specifically, Plaintiff states that Yolo County Sheriff, Defendant Edward Prieto ("Defendant Prieto"), subjected Plaintiff and several dozen other female employees to unwelcome hugs and kisses. (ECF No. 1 at ¶¶ 15–16.) Plaintiff alleges that her co-workers and supervisors would tease her about these acts. (ECF No. 1 at ¶ 22.) Plaintiff further states that she reported Defendant Prieto's conduct to her supervisors, who failed to file a formal complaint, and that she was discouraged from making a formal complaint. (ECF No. 1 at ¶ 18–19.) Plaintiff's complaint states that these interactions with Defendant Prieto created a hostile work environment because Plaintiff "found it difficult to concentrate at work when Prieto was nearby, her work was made inefficient during times she tried to avoid contact with Prieto, and she grew anxious and upset when Prieto was nearby or was said to be nearby." (ECF No. 1 at ¶ 24.) Following the close of discovery, Defendants filed the motion at issue.

## II.     STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."

---

[1] Plaintiff exhausted her administrative remedies and received a right-to-sue notice from the Equal Opportunity Commission ("EEOC") on July 5, 2012, and a right-to-sue-notice from the California Department of Fair Employment and Housing ("DFEH") on May 9, 2012. (ECF No. 1 at ¶¶ 10–13).

*Id.* at 324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585−87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288−289 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 251−52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank*, 391 U.S. at 288−89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305−06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

*Nielsen Freight Lines*, 602 F. Supp. 1224, 1244−45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

**III.   ANALYSIS**

  **a.**  Hostile Work Environment under Title VII and FEHA[2]

To make a prima facie case of a hostile work environment, Plaintiff must demonstrate: "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995) (internal quotations omitted).  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment Title VII is violated."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotations omitted).  The working environment must be perceived as both subjectively and objectively abusive.  *Id.* at 20–21.  In addition, the "conduct must be extreme to amount to a change in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Defendants filed a motion for summary judgment, arguing that Plaintiff failed to prove a prima facie case on three grounds: 1) Plaintiff was not subjected to sexual conduct by Defendant Prieto;  2) Plaintiff never communicated to Defendant Prieto that his conduct was unwelcome[3]; 3)

---

[2] The Court agrees with Plaintiff that, "[b]ecause Title VII and FEHA share identical anti-discrimination objective and public policy purposes, federal courts look to federal case law interpreting Title VII to determine FEHA's meaning, particularly when it involves FEHA's analogue to Title VII provisions."  (ECF No. 19 at 3.)  The California courts consistently look to Title VII for guidance in interpreting FEHA.  *Kohler v. Inter-Tel Technologies*, 244 F.3d 1167, 1172−73 (9th Cir. 2001); *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998) ("Because the antidiscrimination objectives and relevant wording of [T]itle VII ... are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA.").  Therefore, this Court undertakes one analysis of both claims, relying on both federal and state precedent.

[3] Plaintiff argues that the law does not require her to report the offensive conduct.  (ECF No. 19 at 7.)  Plaintiff is correct that failure to report offensive conduct does not invalidate her claim.  Defendants' argument on this issue is irrelevant to the Court's analysis and will not be addressed in this Order.

1  and Plaintiff was not subjected to severe or pervasive harassment.  (ECF No. 14.)  However, "[t]o

2  determine whether an environment is sufficiently hostile, we look to the totality of the

3  circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is

4  physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

5  interferes with an employee's work performance.'"  *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th

6  Cir. 2000) (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367).  Indeed, the parties' briefs

7  demonstrate that many of these legal issues are intertwined within a complicated factual history.

8  (ECF No. 14.)  For that reason, the Court will analyze the facts holistically, drawing all

9  reasonable inferences in favor of the Plaintiff.  *Anderson*, 477 U.S. at 255.

10                              **i.**  Defendant Prieto's Conduct Toward Plaintiff

11       Plaintiff alleges that Defendants created a hostile work environment between 1998 and

12  2011.  (Complaint, ECF No. 1 at ¶ 25.)  Her complaint specifies that during her employment with

13  the Department, Plaintiff was subjected to unwelcome hugs and kisses from Defendant Prieto.

14  (ECF No. 1 at ¶ 16.)  Plaintiff alleges that Defendant Prieto hugged her at least 100 times in

15  "awkward, unsolicited, and unwelcome" encounters.  (ECF No. 1 at ¶ 16.)  Plaintiff explained

16  that these encounters typically occurred at work-related ceremonies, such as GED graduations,

17  promotional or welcome ceremonies, award parties and Christmas banquets.  (ECF No. 20-1,

18  Statement of Undisputed Facts ("SUF") ¶ 25.)  Approximately 20 times, Defendant Prieto would

19  "pop-in" at the jail and would hug Plaintiff during normal work hours.  Zetwick Depo.

20  287:17−288:3.  On some occasions, these hugs were accompanied by a kiss on the cheek,

21  although Plaintiff stated that Defendant Prieto had not kissed her on the cheek since 2010.  (ECF

22  No. 1 at ¶ 17 and ECF No. 20-1, SUF ¶ 34.)  Plaintiff describes a single instance in May 2003

23  wherein Sheriff Prieto encountered Plaintiff at an award banquet and congratulated her on her

24  recent marriage by hugging her and giving her a kiss half on the corner of the her lips and half on

25  her cheek.  (ECF NO. 20-1, SUF ¶ 1.)  This type of kiss only occurred on that one occasion.

26  (ECF NO. 20-1, SUF ¶ 1.)  Defendant Prieto was made aware of Plaintiff's protests to his conduct

27  when she filed a Government Claim in February of 2012.  (ECF NO. 20-1, SUF ¶ 8.)  Defendant

28  Prieto never kissed or hugged Plaintiff following his notice of that claim.  (ECF NO. 20-1, SUF ¶

8.)

Defendants' summary judgment motion asserts that Plaintiff was not "subjected to sexual conduct" and therefore does not form the basis of a hostile work environment. (ECF No. 14 at 10–12.) The phrase "subjected to sexual conduct" is misleading in this instance. Although the standard set forth in Ninth Circuit states simply that actionable conduct must be "of a sexual nature," *Fuller*, 47 F.3d at 1527, the United States Supreme Court clarified that "harassing conduct need not be motivated by sexual desire;" all that is required is discrimination based on sex. *Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 80 (1998). Therefore, the Court interprets Defendants' motion as arguing that Defendant Prieto's conduct does not itself rise to the level of harassment recognized by Title VII and that the work environment itself cannot be viewed as objectively abusive as required by the Supreme Court in *Harris*. 510 U.S. at 20–21.

**1.** Workplace Conduct as Sexual Harassment

Defendants are correct that Defendant Prieto's conduct does not rise to the level required to establish a hostile work environment. Courts have found that hugging and kissing on the cheek in the workplace is not only insufficient to sustain a claim of hostile work environment, but overextends the intended scope of Title VII. In addressing specifically this issue, the United States Supreme Court stated:

> The statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the conditions' of the victim's employment. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory conditions of employment.

*Oncale*, 523 U.S. at 81 (internal citations omitted). Hugging, and even kissing on the cheek, is a

1  common physical interaction at a workplace. *See, e.g., Lefevre v Design Professionals Ins.*
2  *Companies*, No. C 93-20720 RPA, 1994 WL 514020 (N.D. Cal. Sept. 15, 1994) ("Frequent
3  handshakes and occasional hugs at business meetings do not amount to pervasive harassment so
4  as to create an objectively hostile work environment."); *Graves v. City of Durant*, No. C09-0061,
5  2010 WL 785850 (N.D. Iowa Mar. 5, 2010) (finding "incidents of unwanted leaning, touching, or
6  hugging, do not rise to the level of actionable hostile work environment sexual harassment");
7  *Joiner v. Wal-Mart Stores, Inc*., 114 F. Supp. 2d 400, 409 (W.D.N.C. 2000) (holding that
8  Plaintiff's claims of unwelcome kissing on the cheek and hugs do not support a hostile work
9  environment claim, "as these are very ordinary things that people do and are not *per se*
10 intimidating, hostile, humiliating, or offensive").

11        There is no evidence to indicate that Defendant Prieto's actions fall outside the scope of
12 these examples.  Not only do courts consider hugs and kisses on the cheek to be within the realm
13 of common workplace behavior, but the facts of this case indicate that this behavior was common
14 in Plaintiff's own workplace.  For example, Plaintiff acknowledged that she was never the only
15 person that Defendant Prieto hugged and that he never hugged her alone.  (ECF NO. 20-1, SUF ¶
16 9.)  Plaintiff herself admitted to hugging other deputies, corrections officers, and supervisors at
17 her work.  (ECF NO. 20-1, SUF ¶ 20.)  In addition, Defendant Prieto's hugs were not exclusively
18 directed toward women.  Defendants presented undisputed evidence that Defendant Prieto did
19 hug male employees as well as women in the office.  (ECF NO. 20-1, SUF ¶¶ 12, 17.)[4]  It is clear
20 from these facts that Defendant Prieto's hugs and kisses on the cheek fell within the definition of
21 ordinary workplace socializing and do not fall within the purview of Title VII.

22        Plaintiff argues that she was not subjected to simple hugs and kisses on the cheek—stating
23 that when Defendant Prieto kissed her on the lips on a single occasion, his behavior escalated into
24 the realm of harassment.  Plaintiff's Motion in Opposition to Defendants' Motion for Summary
25 Judgment states, "the nature of Sheriff Prieto's hugs and kisses comes in sharp focus when

---

[4] Plaintiff disputes that Defendant Prieto hugs men, but offered only her personal testimony that she had never seen Defendant Prieto hug a man.  (ECF NO. 20-1, SUF ¶ 17.)  Defendants offer declarations from other employees stating that Defendant Prieto did hug men on occasion.  (ECF No. 14-3, Day Decl. at ¶ 4; ECF No. 14-5, Hunter Decl. ¶ 6; ECF No 14-7, Rademaker Decl. ¶ 14.)  Plaintiff's statement that she did not see these hugs does not conflict with declarants' testimony that they occurred.  (ECF NO. 20-1, SUF ¶ 17.)

1    viewed in the light of the purposeful kiss that he planted on Plaintiff's lips in May 2003." (ECF
2    No. 19 at 5.)[5]  Both Defendants and Plaintiff agree that, in this instance, Defendant Prieto kissed
3    Plaintiff on the side of the mouth, in the presence of her husband, while congratulating her on her
4    recent marriage.  (ECF NO. 20-1, SUF ¶ 18.)  This occurrence, Plaintiff asserts, changed the
5    nature of every interaction between Plaintiff and Defendant Prieto, making his other innocuous
6    hugs and kisses on the cheek into a basis for a sexual harassment claim.  (ECF No. 19 at 5.)

7        Plaintiff is correct that, in some instances, a single severe incident may escalate all
8    subsequent interactions, creating a hostile work environment from interactions that would not
9    normally rise to such a level.  *Sheffield v. Los Angeles Cnty. Dep't of Soc. Servs.*, 109 Cal. App.
10   4th 153, 163-64 (2003) (determining that the threat of violence could "drastically" change the
11   work environment such that behavior that was simply "boorish or overbearing" could create a
12   hostile work environment).  However, the undisputed facts in this case cannot support Plaintiff's
13   argument.  This kiss, even if intentional, was a single incident outside the character of all the
14   other interactions and did not mark the beginning of an escalated pattern of harassment.  The
15   partial kiss on the mouth, which occurred in May of 2003, was never repeated.  (ECF NO. 20-1,
16   SUF ¶ 2.)  In fact, Plaintiff testifies that Defendant Prieto stopped kissing her *on the cheek*
17   altogether by 2010.  (ECF NO. 20-1, SUF ¶ 6, 34.)  Furthermore, Plaintiff did not testify that the
18   number of hugs increased or that their character became more sexual following the partial kiss on
19   the mouth.  Instead, between 1999 and 2006, Plaintiff's deposition testimony indicated that she
20   worked the night shift and rarely saw Defendant Prieto at all during that time.  (ECF No. 20 at 7
21   n.11 and ECF No. 20-1, SUF ¶¶ 29–33.)  This event cannot be used to establish a pattern of
22   harassment.

23       Nor could this incident on its own support Plaintiff's claims.  Even a severe isolated
24   incidence cannot meet the standard to establish a hostile work environment.  *Brooks v. City of San*
25   *Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) (holding that a physical assault in which defendant

---

[5] Whether Defendant Prieto intentionally kissed Plaintiff partially on the mouth is a disputed fact, so the Court will find in favor of Plaintiff on this disputed fact.  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.

8

inappropriately touched plaintiff's stomach and breast was insufficient to support a hostile work environment claim). Plaintiff still must establish a pattern of abusive behavior that rises to a severe or pervasive level. Defendant Prieto never threatened Plaintiff in any manner, never gave her inappropriate gifts, never showed Plaintiff any offensive jokes or cartoons, never directed any sexually inappropriate comment toward Plaintiff, and never touched her breasts, buttocks, or any other part of her body other than her back when he hugged her. (ECF NO. 20-1, SUF ¶¶ 37, 39, 40–42.) Defendant Prieto's partial kiss on Plaintiff's mouth cannot support her hostile work environment claim.

### 2.   Objectively Abusive Behavior

Plaintiff further supports her claim that Defendant Prieto's actions establish a hostile work environment by stating that "numerous women advised Plaintiff that they did not like getting hugs from Sheriff Prieto" and that she was present when Defendant Prieto inappropriately commented on another female employee's weight. (ECF No. 19 at 5.) Plaintiff uses these examples to support her claim that Defendant Prieto's behavior was abusive. (ECF No. 19 at 5.) Plaintiff has the burden to demonstrate that her work environment is "both subjectively and objectively [ ] perceived as abusive." *Harris*, 510 U.S. at 20–21. Certainly, at the summary judgment stage, Plaintiff's statement that she interpreted the conduct as abusive is sufficient to meet the first requirement. However, whether an individual's conduct is objectively abusive is assessed by anticipating the response of a "reasonable woman" placed in Plaintiff's position, not anecdotal facts about the reactions of other women in the workplace. *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir.1991). Plaintiff's statements cannot establish that Defendant Prieto's actions were abusive for the purpose of establishing a hostile work environment.[6]

Plaintiff fails to demonstrate that Defendant Prieto's conduct is objectively abusive— citing examples of Defendant Prieto's conduct against other women is not sufficient to meet that standard. *Thompson v. Donahoe*, 961 F. Supp. 2d 1017, 1028 (N.D. Cal. 2013), *appeal dismissed* (Feb. 26, 2014) (granting summary judgment in favor of defendants where plaintiff witnessed

---

[6] These observations are relevant to Plaintiff's claims that the hostile work environment is severe or pervasive and is therefore discussed in Section III.a.ii.3, *infra*.

9

defendant hugging and touching the hair of another employee). Plaintiff named two other women who told her that they did not like getting hugs from Defendant Prieto (ECF No. 19 at 5.), but it is also undisputed that Plaintiff was aware that there were other female employees who were not offended by Defendant Prieto's hugs (ECF NO. 20-1, SUF ¶ 15.) Plaintiff's assertion that two women felt similarly about Defendant's hugs does not change the fact that Defendant Prieto engaged in common workplace behavior.

Moreover, one of Plaintiff's examples does not survive factual scrutiny in discovery. Plaintiff names Robin Malugani as being offended by Defendant Prieto's hugs. (ECF No. 19 at 5.) However, Robin Malugani, submitted a declaration to this Court stating that she is "not a hugger, but [she] was not bothered by [the hug] because it is not sexual and is not the kind of hug you would give your husband." (ECF No. 14-6, Malugani Decl., ¶ 4.) Plaintiff also states that Defendant Prieto made inappropriate comments to Ms. Malugani about her weight in a "sexually aggressive" manner. (ECF No. 19 at 6.) However, Ms. Malugani stated in her declaration that the incident was awkward and embarrassing because her weight loss was due to cancer. (ECF No. 14-1, Malugani Decl., ¶ 7.) She did not "feel the comment was sexual or because of [her] gender" and she decided not to report it. *Id.* It is clear from Ms. Malugani's declaration that she did not find Defendant Prieto's conduct to be abusive. As this example makes clear, the Court cannot rely on Plaintiff's anecdotal stories of offended female coworkers to determine that Defendant Prieto's actions were objectively abusive. *Fuller*, 47 F.3d at 1527 ("Hostility must be measured based on the totality of the circumstances.").

Plaintiff further states that Defendant Prieto's actions created a hostile work environment because he was aware that "people had complained" about his hugs, but continued to hug Plaintiff anyway. (ECF No. 1 at ¶ 21.) Plaintiff also alleges that she gave Defendant Prieto physical signals that she did not like his conduct, such as putting her hands on his shoulders to block his hugs, turning her head away from him when he reached for a kiss, offering handshakes instead of hugs, and never initiating hugs or kisses. (ECF No. 19 at 8.) Plaintiff's statements certainly establish that Defendant Prieto may be unobservant or unperceptive. However, boorish or overbearing behavior alone is not sufficient to sustain a hostile work environment claim.

1  *Sheffield*, 109 Cal. App. 4th at 163–64.  Defendant Prieto was made aware of Plaintiff's
2  complaints about his conduct when she filed a Government Claim in February of 2012, and
3  thereafter, he never kissed or hugged Plaintiff again.  (ECF NO. 20-1, SUF ¶ 8.)  Defendant
4  Prieto's conduct is the type "ordinary socializing in the workplace" that does not establish a
5  hostile work environment.  *Oncale,* 523 U.S. at 81.

6                  **ii.**  Severe or Pervasive Harassment

7        Summary judgment is appropriate in this action on the grounds that Defendant Prieto's
8  conduct does not rise to the level of a Title VII/FEHA violation and is not objectively abusive.
9  However, even if Defendant Prieto's conduct fell within the scope of Title VII/FEHA, Plaintiff
10  still has not demonstrated that the conduct was sufficiently severe or pervasive to establish a
11  hostile work environment.  "Conduct that is not severe or pervasive enough to create an
12  objectively hostile or abusive work environment—an environment that a reasonable person would
13  find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21–22. "The
14  plaintiff has the burden of establishing the severity and persistence of the harassment of which
15  she complains."  *Ritzert-Smith v. Siemens Nuclear Power Corp.*, 76 F.3d 388 (9th Cir. 1995).
16  Assessing the totality of the circumstances, this Court finds that Plaintiff has failed to show either
17  a sufficient tangible job detriment or sufficient severe or pervasive conduct.

18                  1.  Lack of a Tangible Job Detriment

19        Plaintiff alleges that Defendant Prieto's conduct unreasonably interfered with her work
20  performance. (ECF No. 19 at 14.)  She states that it was difficult for her to go to work, she was
21  always stressed, suffered from anxiety, and took a sleep aid to help her sleep. (ECF No. 19 at
22  15.)  She also stated that she cried in the locker room at work and was unable to concentrate on
23  her job. (ECF No. 19 at 15.)  Certainly, these effects interfere with an individual's job, but they
24  do not constitute a tangible job detriment.  *Harris*, 510 U.S. at 22 (finding that a hostile work
25  environment may be established even when no tangible job detriment, such as impacted job
26  performance, exists).  A tangible job detriment exists where Plaintiff can demonstrate serious
27  effects on her psychological well-being that result in poor job performance, prevents plaintiff
28  from advancing in her career, or discourages plaintiff from remaining at the job.  *Id.*

The undisputed facts indicate that Plaintiff was promoted to Sergeant when she applied for the position, that she has consistently scored "exceeds standards" in almost every aspect of her performance evaluations since Defendant Prieto was elected to the position of Sheriff, and that she cannot point to any specific instance where her work was criticized as a result of the effect of Defendant Prieto's actions. (ECF NO. 20-1, SUF ¶¶ 52, 55, 57.) Plaintiff also cannot point to any assignment that she was unable to complete due to Defendant Prieto's conduct, nor any days she took off work due to stress resulting from Defendant Prieto's conduct. (ECF NO. 20-1, SUF ¶¶ 58–59.) Plaintiff has not alleged any lost wages, unwarranted discipline, any changes in work assignments, or any lost promotional opportunities. (ECF NO. 20-1, SUF ¶ 62.) These facts do not demonstrate a tangible job detriment.

"[W]hen a plaintiff cannot point to a loss of tangible job benefits, she must make a commensurately higher showing that the sexually harassing conduct was pervasive and destructive of the working environment." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 284 (2006) (internal citations omitted); s*ee also, Walpole v. City of Mesa*, 162 F. App'x 715, 716–17 (9th Cir. 2006) (holding that plaintiff must show either the conduct "unreasonably interfered" with plaintiff's work or that the environment was "permeated with discriminatory intimidation, ridicule, and insult."); *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 590 (9th Cir. 1992) (holding plaintiff's claim failed because she failed to identify benefits or opportunities denied as a result of discrimination); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 610 (1989) ("[T]he absence of [a tangible job] detriment requires a commensurately higher showing that the sexually harassing conduct was pervasive and destructive of the working environment.") (citing *Jones v. Flagship Intern.* 793 F.2d 714, 720 (5th Cir. 1986)). Although not fatal to her claim, the lack of a proven tangible job detriment weighs against Plaintiff's ability to prove a hostile work environment. *Harris*, 510 U.S. at 23.

### 2.  Sporadic Conduct is Not Severe or Pervasive

Because the Court must assess the totality of the circumstances, there is no bright line test to determine what constitutes conduct sufficiently "severe or pervasive" to alter working conditions and establish a hostile work environment. *Fuller*, 47 F.3d at 1527. However, it is

clear that "an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Lyle*, 38 Cal. 4th at 283.  The facts indicate that these hugging and kissing incidents took place primarily outside of regular work hours – at GED graduations, promotional or welcome ceremonies, award banquets, and Christmas parties.  (ECF NO. 20-1, SUF ¶ 25.)  In addition to these special events, Plaintiff estimated that Defendant Prieto made approximately 20 unannounced visits to her workplace over a 13 year period.  (ECF NO. 20-1, SUF ¶ 28.)  Plaintiff has presented no evidence that she encountered Defendant Prieto with any regularity.  He did not work in the same building as Plaintiff and only came to her workplace outside of special occasions.  (ECF No. 19 at 11.)  Plaintiff estimated that she had nearly 100 encounters with Defendant Prieto where he attempted to hug her or kiss her on the cheek across the 13 years preceding this suit.  (ECF No. 19 at 11–12.)  While both parties acknowledged that the frequency of the interactions varied, simple math indicates that Plaintiff experienced this conduct an average of around seven or eight times per year for a couple seconds on each occurrence.  (ECF NO. 20-1, SUF ¶ 10.)

The Court finds that Defendant Prieto's conduct in this case was not severe and pervasive.  First, Plaintiff did not encounter Defendant Prieto on a daily basis and they did not work in the same building. *Himaka v. Buddhist Churches of Am.*, 917 F. Supp. 698, 706 (N.D. Cal. 1995) (finding that a hostile work environment did not exist where plaintiff and defendant did not work together on a daily basis).  Second, most of the physical interactions between them occurred outside of normal work hours.  *Himaka*, 917 F. Supp. at 706 (finding that a hostile work environment did not exist where the majority of the harassing behavior occurred outside of work hours).  Finally, as discussed in Section III. a. i.2, *supra*, "[h]ugging and touching hair by itself is not objectively severe, and Plaintiff provides no evidence that it was physically threatening or humiliating to her or interfered with her work performance." *Thompson,* 961 F. Supp. 2d at 1028; *see also Lefevre*, 1994 WL 514020 at *3 (finding that handshakes and hugs accompanied by a condescending tone and nicknames like "kiddo," "buddy," and "babe" did not amount to pervasive harassment).

Plaintiff states in her opposition that there is no "threshold magic number of harassing incidents" that gives rise to liability. (ECF No. 19 at 12.) (citing *E.E.O.C. v. Cali. Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249 (E.D. Cal. 2009)). Her assertion is correct. Since the law requires the courts to assess the totality of the circumstances there cannot be a bright line threshold establishing how many acts make conduct "severe." However, this fact does not prevent courts from finding that a hostile work environment does not exist. *See California Psychiatric Transitions, Inc.*, 644 F. Supp. 2d at 1277 (finding that "the pervasiveness of the conduct that must be shown… varies inversely with the seriousness of the incidents" and citing to Ninth Circuit precedent for granting summary judgment when incidents are not sufficiently severe or pervasive) (citing *Ellison*, 924 F.2d at 880–81 (9th Cir.1991)). The Ninth Circuit Court has upheld dismissal of these types of claims on facts far more egregious than the ones alleged in this case. *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 421 (9th Cir. 2013) (employee subjected to crude sexual remarks by an employee she saw once a week for three months was not sufficiently severe or pervasive.); *Candelore*, 975 F.2d at 590 ("Further, the isolated incidents of sexual horseplay alleged by Candelore took place over a period of years and were not so egregious as to render Candelore's work environment 'hostile.'"); *Jordan v. Clark*, 847 F.2d 1368, 1374–75 (9th Cir.1988), *cert. denied*, 488 U.S. 1006 (1989) (abusive environment not created where defendant improperly touched plaintiff, called her at home, and coworkers told "off-color" jokes at work). Based on the totality of the circumstances Defendant Prieto's conduct did not create a severe or pervasive work environment with respect to Plaintiff.

                3. Witnessing Conduct Toward Others

Plaintiff further argues that circumstances related to Defendant Prieto's conduct contributed to the creation of a hostile work environment. Specifically, she states that she witnessed Defendant Prieto hug other women in her workplace and that other women did not like Defendant Prieto's conduct. (ECF No. 19 at 5.) Plaintiff also asserts that she witnessed Defendant Prieto hug and kiss several dozen other female employees, but that Defendant Prieto would only give handshakes to the male employees. (ECF No. 1 at ¶ 15.) Plaintiff stated that she witnessed Defendant Prieto ask a female sergeant how much she weighed, and continued to

repeat the question until the sergeant responded. (ECF No. 1 at ¶ 20.)[7] Witnessing these interactions, however, is also not sufficient to create a severe and pervasive work environment. *Thompson v. Donahoe*, 961 F. Supp. 2d at 1028 (finding that a hostile work environment did not exist where plaintiff witnessed defendant hugging and showing affection toward other women).

### 4. Coworker Teasing Cannot Create a Hostile Work Environment

Plaintiff states in her complaint that, "[o]ver the years, Plaintiff's co-workers and supervising lieutenants would tease Plaintiff that Defendant Prieto was going to kiss her on the lips." (ECF No. 1 at ¶ 22.) She does not directly allege, however, that this teasing contributed to a hostile work environment. Even so, the Court does not find the teasing by her co-workers and her supervisors created a hostile work environment. *Ostin v. Gate Gourmet, Inc.*, No. CV-01-466-ST, 2001 WL 34039106 (D. Or. Nov. 30, 2001) ("'[O]ccasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers,' will not support liability under Title VII.") (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)).

The Statement of Undisputed Facts indicates that hugging was the subject of regular banter among coworkers, in which Plaintiff participated. (ECF NO. 20-1, SUF ¶ 46 and ECF No. 14-6, Malugani Decl., ¶ 4.) Generally, Plaintiff and her coworkers joked about inappropriate things to relieve stress. ECF NO. 20-1, SUF ¶ 48 and ECF No. 14-6, Malugani Decl., ¶ 6.). As Lieutenant Tina Day stated in her declaration, "[w]e [Lt. Rademaker, Sgt. Malugani, Sgt. Castenaga, and Sgt. Zetwick] have always teased each other, laughed and joked together as a way to blow off steam in a stressful work environment." (ECF No. 14-3, Day Decl. ¶ 10.) Lieutenant Rademaker further stated, "[t]he emails she sends me and some of the jokes she makes are sometimes inappropriate, but in the environment we work in, nobody is bothered by them and it is a way of dealing with stress. Over the years we have learned to laugh with each other, at each other and at the stressful situations that can arise in a jail environment." (ECF No 14-7, Rademaker Decl. ¶ 3 and ECF No. 20-1, SUF ¶ 49.) Moreover, Plaintiff never asked her coworkers to stop joking about Defendant Prieto's hugs. (ECF NO. 20-1, SUF ¶ 50.) Because

---

[7] The Court discussed these allegations in Section III. A. i. 2, *supra*, to determine if they create an objectively abusive conduct, but now analyzes whether these facts, if true, could create a severe or pervasive hostile work environment.

Plaintiff participated in the acts of which she now complains, the joking that occurred in her workplace cannot contribute to a hostile work environment. *Mosakowski v. PSS World Med., Inc.*, 329 F. Supp. 2d 1112, 1122 (D. Ariz. 2003).

      b.  FEHA – Failure to Prevent Sexual Harassment

Defendants cannot be liable for failing to prevent harassment if no harassment occurred. *Trujillo v. North County Transit Dist.*, 63 Cal.App.4th 280, 289 (1998). Because Plaintiff has failed to demonstrate a hostile work environment under Title VII or FEHA, her third claim must similarly be dismissed.[8]

## IV. CONCLUSION

Title VII and FEHA are not intended to create a general work civility code. "The statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale*, 523 U.S. at 81. Plaintiff did not put forth sufficient facts to support her claim that Defendant Prieto's conduct rose to the level of harassment sufficient to create a hostile work environment. Defendants' Motion for Summary Judgment (ECF No. 14) is GRANTED. Plaintiff's claims are DISMISSED. The Clerk of Court is directed to close this case.

IT IS ORDERED.

Dated: November 5, 2014

                      Troy L. Nunley
                      United States District Judge

---

[8] Because this claim is dismissed, the Court will not address Plaintiff's assertions that she was discouraged from making a formal complaint regarding Defendant Prieto's behavior. (ECF No. 1 at ¶ 19.) These facts are only relevant to Plaintiff's argument that Defendants failed to prevent discrimination under FEHA and do not impact her hostile work environment claim.